**YANNI LAW APC**
John C. Bohren (California State Bar No. 295292)
yanni@bohrenlaw.com
145 South Spring Street, Suite 850
Los Angeles, CA 90012
Telephone: (619) 433-2803

**POULIN | WILLEY | ANASTOPOULO, LLC**
Paul J. Doolittle (*Pro Hac Vice* Forthcoming)
*paul.doolittle@poulinwilley.com*
32 Ann Street
Charleston, SC 29403
Telephone: (803) 222-2222

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **KRISTEN JAVIS,**<br><br>        **Plaintiff,**<br><br>**vs.**<br><br>**CUSO FINANCIAL SERVICES, LP,**<br><br>        **Defendant** | **Case No.:** '24CV2137 L    KSC<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>**(1) NEGLIGENCE PER SE**<br>**(2) UNJUST ENRICHMENT**<br>**(3) INVASION OF PRIVACY**<br>**(4) VIOLATION OF CAL. BUS. & PROF. CODE §17200 ET SEQ**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

1

Plaintiff Kristen Javis, ("Plaintiff") brings this Class Action Complaint against Defendant CUSO Financial Services, LP, ("Defendant" or "CUSO") as an individual and on behalf of all others similarly situated, and alleges, upon personal knowledge as to Plaintiff's own actions and to counsels' investigation, and upon information and belief as to all other matters, as follows:

## STATEMENT OF FACTS

1.      Plaintiff brings this class action against Defendant for its failure to properly secure and safeguard the personally identifiable information ("PII") of roughly 75,000 people.

2.      Upon information and belief, Defendant CUSO Financial Services, LP is a broker-dealer and subsidiary of Atria Wealth. Based in San Diego, California, CUSO specializes in serving credit unions and banks along with bank or credit union-owned broker-dealers.[1]

3.      On or about October 28, 2024, Defendant filed a notice of data breach with the Attorney General of Maine after discovering that an incident at a third-party service provider resulted in unauthorized access to a CUSO employee's email account.[2]

---

[1] https://www.jdsupra.com/legalnews/cuso-financial-services-reports-data-1795322/
[2] *Id.*

4.      On or about January 19, 2024, Defendant learned of suspicious activity involving a third-party service provider that Defendant uses for archiving communications.[3] In response, Defendant launched an investigation, ultimately confirming that an unauthorized person was able to access a CUSO employee's email account between December 19, 2023 and January 19, 2024.[4] It was later determined that the unauthorized party could access certain sensitive information while in the employee's account (hereafter, the "Data Breach").[5]

5.      To date, Defendant has yet to notify individuals who were affected by the Data Breach of the root cause of the Data Breach, the vulnerabilities exploited, and the remedial measures undertaken to ensure such a breach does not occur again. These details have not been explained or clarified to Plaintiff, who retains a vested interest in ensuring that their PII remains protected.

6.      Upon information and belief, the mechanism of the cyberattack and potential for improper disclosure of Plaintiff's PII was a known risk to Defendant, and thus, Defendant was on notice that failing to take steps necessary to secure the PII from those risks left the data in a dangerous condition.

_____

[3] *Id.*
[4] *Id.*
[5] *Id.*

3

7.      The Data Breach was a direct result of Defendant's failure to implement reasonable safeguards to protect PII from a foreseeable and preventable risk of unauthorized disclosure. Had Defendant implemented administrative, technical, and physical controls consistent with industry standards and best practices, it could have prevented the Data Breach.

8.      Defendant's conduct resulted in the unauthorized disclosure of Plaintiff's private information to cybercriminals. The unauthorized disclosure of Plaintiff's PII constitutes an invasion of a legally protected privacy interest, that is traceable to the Defendant's failure to adequately secure the PII in its custody, and has resulted in actual, particularized, and concrete harm to the Plaintiff.

9.      Plaintiff has sustained actual injuries because of the Data Breach. More specifically, Plaintiff has received a fraud alert from a monitoring service, has experienced unauthorized activity in at least one online account, and has been receiving unsolicited communications designed to trick Plaintiff into disclosing further personal information.

10.     Defendant has not provided any assurances that: all data acquired in the Data Breach, or copies thereof, have been recovered or destroyed; or, that Defendant has modified its data protection policies, procedures, and practices sufficient to avoid future, similar, data breaches.  Therefore, Plaintiff remains at risk of future harm as a result of the Data Breach.

11.     The imminent risk of future harm resulting from the Data Breach is traceable to the Defendant's failure to adequately secure the PII in its custody, and has created a separate, particularized, and concrete harm to the Plaintiff.

12.     More specifically, the Plaintiff's exposure to the substantial risk of future exploitation caused them to: (i) spend money on mitigation measures like credit monitoring services and/or dark web searches; (ii) lose time and effort spent responding to the Data Breach or removing their data from data broker websites; and/or (iii) experience emotional distress associated with reviewing accounts for fraud, changing usernames and passwords or closing accounts to prevent fraud, and general anxiety over the consequences of the Data Breach. The harm Plaintiff suffered can be redressed by a favorable decision in this matter.

13.     Armed with the PII acquired in the Data Breach, data thieves have already engaged in theft and can, in the future, commit a variety of crimes including, opening new financial accounts, taking out loans, using Plaintiff's information to obtain government benefits, file fraudulent tax returns, obtain driver's licenses, and give false information to police during an arrest.

14.     As a result of the Data Breach, Plaintiff suffered injuries including, but not limited to: (i) invasion of privacy; (ii) theft of PII; (iii) lost or diminished value of PII; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the

bargain; (vi) an increase in spam calls, texts, and/or emails; (vii) statutory damages; (viii) nominal damages; and (ix) the continued and increased risk their PII will be further misused, where: (a) their data remains unencrypted and available for unauthorized third parties to access on the dark web or otherwise; and (b) remains backed up under Defendant's possession or control and is subject to further unauthorized disclosures so long as Defendant fails to implement appropriate and reasonable measures to protect the data.

15.    Defendant was obligated to use reasonable technical, administrative, and physical safeguards to protect the PII in its possession. Defendant's privacy policy provides, in relevant part, "[we] maintain physical, electronic, and procedural safeguards that comply with federal standards to safeguard your personal information. . . . Access to your personal information is limited to those employees, registered representatives, and agents who may need to know that information to provide products or services to you. They are required to maintain the confidentiality of all customer information."[6]

16.    Despite promising to implement and maintain electronic and procedural safeguards to protect the confidentiality of Plaintiff's personal

_____

[6] CUSO Financial Privacy Policy, available here: https://cusonet.com/privacy-policy/ (last accessed 10/31/2024).

information, Defendant failed to implement technical controls and/or implement policies and procedures designed to prevent the Data Breach.

17.    Plaintiff and Class Members (later defined) were impacted by the Data Breach. Plaintiff brings this class action lawsuit individually, and on behalf of all those similarly situated, to address Defendant's inadequate data protection practices and for failing to provide timely and adequate notice of the Data Breach.

18.    Through this Complaint, Plaintiff seeks to remedy these harms individually, and on behalf of all similarly situated individuals whose PII was accessed during the Data Breach. Plaintiff has a continuing interest in ensuring that personal information is kept confidential and protected from disclosure, and Plaintiff should be entitled to injunctive and other equitable relief.

### Data Breaches Are Avoidable

19.    Upon information and belief, the mechanism of the cyberattack and potential for improper disclosure of Plaintiff's PII was a known risk to Defendant, and thus, Defendant was on notice that failing to take steps necessary to secure the PII from those risks left the data in a dangerous condition.

20.    Upon information and belief, the Data Breach was a direct result of Defendant's failure to: (i) identify risks and potential effects of collecting, maintaining, and sharing personal information; (ii) implement reasonable data protection measures for the collection, use, disclosure, and storage of personal

7

information; and/or (iii) ensure its third-party vendors were required to implement reasonable data protection measures.

21.   To detect and prevent data breaches, Defendant could and should have implemented the following measures:

<u>Reasonable Safeguards</u>

a. Create a "culture of security" by implementing a regular schedule of employee training. Update employees as you find out about new risks and vulnerabilities.

b. Tell employees about your company policies regarding keeping information secure and confidential. Post reminders in areas where sensitive information is used or stored, as well as where employees congregate.

c. Teach employees about the dangers of spear phishing—emails containing information that makes the emails look legitimate. These emails may appear to come from someone within your company, generally someone in a position of authority. Make it office policy to independently verify any emails requesting sensitive information.

d. Assess the vulnerability of each connection to commonly known or reasonably foreseeable attacks. Depending on the circumstances, appropriate assessments may range from having a knowledgeable employee run off-the-shelf security software to having an independent professional conduct a full-scale security audit.

e. Implement an awareness and training program. Because end users are targets, employees and individuals should be aware of potential threats and how they are delivered.

f. Encrypt sensitive information that you send to third parties over public networks (like the internet) and encrypt sensitive information that is stored on your computer network, laptops, or portable storage devices used by your employees. Consider also encrypting email transmissions within your business.

g.  Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email.

h.  Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.

i.  Configure firewalls to block access to known malicious IP addresses.

j.  Conduct an annual penetration test and vulnerability assessment.

k.  Identify the computers or servers where sensitive personal information is stored.

l.  Identify all connections to the computers where you store sensitive information. These may include the internet, electronic cash registers, computers at your branch offices, computers used by service providers to support your network, digital copiers, and wireless devices like smartphones, tablets, or inventory scanners.

m.  Don't store sensitive consumer data on any computer with an internet connection unless it's essential for conducting your business.

n.  Regularly patch critical vulnerabilities in operating systems, software, and firmware on devices. Consider using a centralized patch management system.

o.  Check expert websites (such as www.us-cert.gov) and your software vendors' websites regularly for alerts about new vulnerabilities and implement policies for installing vendor-approved patches to correct problems.

p.  Scan computers on your network to identify and profile the operating system and open network services. If you find services that you don't need, disable them to prevent hacks or other potential security problems.

q.  Set anti-virus and anti-malware programs to conduct regular scans automatically.

r.  Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.

s.  Configure access controls—including file, directory, and network share permissions— with least privilege in mind. If a user only needs

9

to read specific files, the user should not have write access to those files, directories, or shares.

t.  Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

u.  Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

v.  Consider disabling Remote Desktop protocol (RDP) if it is not being used.

w.  Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.

x.  Execute operating system environments or specific programs in a virtualized environment.

y.  Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.

z.  Secure your backups.[7]

aa. Regularly run up-to-date anti-malware programs on individual computers and on servers on your network.

bb. Restrict employees' ability to download unauthorized software. Software downloaded to devices that connect to your network (computers, smartphones, and tablets) could be used to distribute malware.

cc. To detect network breaches when they occur, consider using an intrusion detection system.

_____

[7] *How to Protect Your Networks from Ransomware*, at p.3, https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view

dd. Before you outsource any of your business functions investigate the company's data security practices and compare their standards to yours.[8]

22.    Given that Defendant collected, used, and stored PII, Defendant could and should have identified the risks and potential effects of collecting, maintaining, and sharing personal information.

23.    Without identifying the potential risks to the personal data in Defendant's possession, Defendant could not identify and implement the necessary measures to detect and prevent cyberattacks. The occurrence of the Data Breach indicates that Defendant failed to adequately implement one or more of the above measures to prevent cyberattacks, resulting in the Data Breach and the exposure of Plaintiff's and the Class Members' PII.

24.    Defendant knew and understood unencrypted PII is valuable and highly sought after by cybercriminals seeking to illegally monetize that data.

25.    At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding PII stored in emails and attachments and of the foreseeable consequences that would occur if a data breach occurred, including the significant cost that would be imposed on Plaintiff and the Class

---

[8] *Protecting Personal Information: A Guide for Business*, https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business.

Members as a result. Defendant should have known about the possible consequences of a data breach especially since Defendant experienced a similar data breach in October 2023 wherein an unauthorized party gained access to historical emails and attachments containing sensitive information. Despite Defendant's knowledge, it failed to adequately secure a known vulnerability, leading to further harm such as the subject Data Breach.

### *Plaintiff and Class Members Sustained Damages in the Data Breach*

26.    The invasion of the Plaintiff's and Class Members' privacy suffered in this Data Breach constitutes an actual, particularized, redressable injury traceable to the Defendant's conduct. As a consequence of the Data Breach, Plaintiff and Class Members sustained monetary damages that exceed the sum or value of $5,000,000.00.

27.    As a result of Defendant's failure to protect Plaintiff's PII, Plaintiff has experienced attempted identity theft, fraud and other exploitation attempts.

28.    Furthermore, Plaintiff and Class Members face a substantial risk of future spam, phishing, or other attacks designed to trick them into sharing sensitive data, downloading malware, or otherwise exposing themselves to cybercrime. The substantial risk of future exploitation created by the Data Breach constitutes a redressable injury traceable to the Defendant's conduct.

29.    Upon information and belief, a criminal can easily link data acquired in the Data Breach with information available from other sources to commit a variety of fraud related crimes.

30.    The substantial risk of future identity theft, fraud, or other exploitation that Plaintiff and Class Members face is sufficiently concrete, particularized, and imminent that it necessitates the present expenditure of funds to mitigate the risk. Consequently, Plaintiff and Class Members have spent, and will spend additional time in the future, on a variety of prudent actions to understand and mitigate the effects of the Data Breach.

31.    For example, the Federal Trade Commission has recommended steps that data breach victims take to protect themselves and their children after a data breach, including: (i) contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for seven years if someone steals their identity); (ii) regularly obtaining and reviewing their credit reports; (iii) removing fraudulent charges from their accounts; (iv) closing new accounts opened in their name; (v) placing a credit freeze on their credit; (vi) replacing government-issued identification; (vii) reporting misused Social Security numbers; (viii) contacting

utilities to ensure no one obtained cable, electric, water, or other similar services in their name; and (ix) correcting their credit reports.[9]

32.    As a consequence of the Data Breach, Plaintiff and Class Members sustained or will incur monetary damages to mitigate the effects of the breach. The retail cost of credit monitoring and identity theft monitoring can cost around $200 a year. The cost of dark web scanning and monitoring services can cost around $180 per year.

33.    As a result of the Data Breach, Plaintiff's and Class Members' PII, which has an inherent market value in both legitimate and illegitimate markets, has been damaged and diminished by its unauthorized release. However, this transfer of value occurred without any consideration paid to Plaintiff or Class Members for their property, resulting in an economic loss. Moreover, the PII is now readily available, and the rarity of the data has been lost, thereby causing additional loss of value.

34.    Personal information is of great value, in 2019, the data brokering industry was worth roughly $200 billion.[10] Data such as name, address, phone

---

[9]*See* Federal Trade Commission, *Identity Theft.gov*, https://www.identitytheft.gov/Steps
[10]    *Column: Shadowy data brokers make the most of their invisibility cloak*, https://www.latimes.com/business/story/2019-11-05/column-data-brokers

number, and credit history has been sold at prices ranging from $40 to $200 per record.[11] Sensitive PII can sell for as much as $363 per record.[12]

35.    Furthermore, Defendant's poor data security practices deprived Plaintiff and Class Members of the benefit of their bargain. By collecting Plaintiff's and Class Members' PII, using their PII for profit or to improve the ability to make profits, and then permitting the unauthorized disclosure of the PII, Plaintiff and Class Members were deprived of the benefit of their bargain.

36.    By selling products or services that required the collection or creation of Plaintiff's and Class Members' PII, Defendant undertook a duty to protect their personal data. However, Defendant did not invest the effort or funds into implementing reasonable data security practices.

37.    Through this Complaint, Plaintiff seeks redress individually, and on behalf of all similarly situated individuals, for the damages that resulted from the Data Breach.

## JURISDICTION & VENUE

---

[11] *In the Dark*, VPNOverview, 2019, available at: https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/
[12] *See, e.g.,* John T. Soma, et al, Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets, 15 Rich. J.L. & Tech. 11, at *3-4 (2009) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted).

38.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C.§1332, because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from each Defendant.

39.     This Court has personal jurisdiction over Defendant because its principal place of business is in this District.

40.     Venue is proper under 28 U.S.C §1391(b) because Defendant maintains a principal place of business in this District and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in and emanated from this District.

## **PARTIES**

41.     Plaintiff Kristen Javis is a citizen of Columbia, South Carolina. At all relevant times, Plaintiff has been a resident of Columbia, South Carolina.

42.     Defendant CUSO Financial Services, LP, is headquartered at 10150 Meanly Drive, First Floor, San Diego, California 92131

## **CLASS ALLEGATIONS**

43.    Plaintiff brings this nationwide class action individually, and on behalf of all similarly situated individuals, pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

44.    The Classes that Plaintiff seeks to represent is defined as follows:

### Nationwide Class

All individuals residing in the United States whose PII was accessed and acquired by an unauthorized party as a result of the Data Breach that occurred between December 19, 2023, and January 19, 2024 (the "Class").

### South Carolina Subclass

All individuals residing in South Carolina whose PII was accessed and acquired by an unauthorized party as a result of the Data Breach that occurred between December 19, 2023, and January 19, 2024 (the "South Carolina Subclass").

### California Subclass

All individuals residing in California whose PII was accessed and acquired by an unauthorized party as a result of the Data Breach that occurred between December 19, 2023, and January 19, 2024 (the "California Subclass").

45.     Collectively, the Class, South Carolina Subclass, and California Subclass are referred to as the "Classes" or "Class Members."

46.     Excluded from the Classes are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers, and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

47.     Plaintiff reserves the right to amend the definitions of the Classes or add a Class or Subclass if further information and discovery indicate that the definitions of the Classes should be narrowed, expanded, or otherwise modified.

48.     Numerosity: The members of the Classes are so numerous that joinder of all members is impracticable, if not completely impossible. The members of the Classes are so numerous that joinder of all of them is impracticable. While the exact number of Class Members is unknown to Plaintiff at this time and such number is exclusively in the possession of Defendant, upon information and belief, 75,000 individuals were impacted in the Data Breach.

49.     Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting solely individual members

of the Classes. The questions of law and fact common to the Classes that predominate over questions which may affect individual Class Members, includes the following:

a. Whether and to what extent Defendant had a duty to protect the PII of Plaintiff and Class Members;

b. Whether Defendant had a duty not to disclose the PII of Plaintiff and Class Members to unauthorized third parties;

c. Whether Defendant failed to adequately safeguard the PII of Plaintiff and Class Members;

d. Whether Defendant required its third-party vendors to adequately safeguard the PII of Plaintiff and Class Members;

e. When Defendant actually learned of the Data Breach;

f. Whether Defendant had a duty to adequately, promptly, and accurately inform Plaintiff and Class Members that their PII had been compromised;

g. Whether Defendant violated the law by failing to promptly notify Plaintiff and Class Members that their PII had been compromised;

h. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

i. Whether Defendant adequately addressed and fixed the practices, procedures, or vulnerabilities which permitted the Data Breach to occur;

j. Whether Plaintiff and Class Members are entitled to actual damages, statutory damages, and/or nominal damages as a result of Defendant's wrongful conduct;

k. Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and ongoing harm faced as a result of the Data Breach.

50.    Typicality: Plaintiff's claims are typical of those of the other members of the Classes because Plaintiff, like every other Class Member, was exposed to

19

virtually identical conduct and now suffers from the same violations of the law as each other member of the Classes.

51. <u>Policies Generally Applicable to the Class</u>: This class action is also appropriate for certification because Defendant acted or refused to act on grounds generally applicable to the Classes, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Classes as a whole. Defendant's policies challenged herein apply to and affect Class Members uniformly and Plaintiff's challenges of these policies hinges on Defendant's conduct with respect to the Classes as a whole, not on facts or law applicable only to Plaintiff.

52. <u>Adequacy</u>: Plaintiff will fairly and adequately represent and protect the interests of the Class Members in that Plaintiff has no disabling conflicts of interest that would be antagonistic to those of the other Class Members. Plaintiff seeks no relief that is antagonistic or adverse to the Class Members and the infringement of the rights and the damages suffered are typical of other Class Members. Plaintiff has retained counsel experienced in complex class action and data breach litigation, and Plaintiff intends to prosecute this action vigorously.

53. <u>Superiority and Manageability</u>: The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action

treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendant. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

54.     The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief for the wrongs alleged because Defendant would necessarily gain an unconscionable advantage since Defendant would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Classes and will establish the right of each Class Member to

recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

55.     The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

56.     Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

57.     Unless a Class-wide injunction is issued, Defendant may continue in its failure to properly secure the PII of Classes, Defendant may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and Defendant may continue to act unlawfully as set forth in this Complaint.

58.     Further, Defendant has acted on grounds that apply generally to the Classes as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class- wide basis.

59.     Likewise, particular issues under Rule 42(d)(1) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a. Whether Defendant failed to timely notify the Plaintiff and the Classes of the Data Breach;

b. Whether Defendant owed a legal duty to Plaintiff and the Classes to exercise due care in collecting, sharing, storing, and safeguarding their PII;

c. Whether Defendant's (or their vendors') security measures to protect its network were reasonable in light of industry best practices;

d. Whether Defendant's (or their vendors') failure to institute adequate data protection measures amounted to negligence;

e. Whether Defendant failed to take commercially reasonable steps to safeguard consumer PII;

f. Whether Defendant made false representations about their data privacy practices and commitment to the security and confidentiality of customer information; and

g. Whether adherence to recommendations and best practices for protecting personal information would have reasonably prevented the Data Breach.

## CAUSES OF ACTION

### (*On behalf of Plaintiff and the Classes*)

### COUNT 1
### NEGLIGENCE/NEGLIGENCE *PER SE*

60.    Plaintiff re-alleges and incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

61.    As a financial institution, Defendant gathered and stored the PII of Plaintiff and Class Members as part of its business of soliciting its services to customers.

62.    Defendant had full knowledge of the types of PII it collected and the types of harm that Plaintiff and Class Members would suffer if that data was accessed and exfiltrated by an unauthorized third-party.

63.    By collecting, storing, sharing, and using the Plaintiff's and Class Members' PII for commercial gain, Defendant assumed a duty to use reasonable means to safeguard the personal data it obtained.

64.    The Federal Trade Commission's Standards for Safeguarding Customer Information (the "Safeguards Rule") 16 CFR §314, requires covered financial institutions to develop, implement, and maintain an information security program with administrative, technical, and physical safeguards designed to protect customer information. The primary requirements of an information security program are:

- Designate a qualified individual to implement and supervise the information security program.
- Conduct an assessment to determine foreseeable risks and threats – internal and external – to the security, confidentiality, and integrity of customer information.
- Design and implement safeguards to control the risks identified through the risk assessment.
- Regularly monitor and test the effectiveness of the chosen safeguards.
- Provide staff with security awareness training and schedule regular refreshers.

- Select service providers with the skills and experience to maintain appropriate safeguards. Include security expectations in vendor contracts, monitor the service provider's work, and provide for periodic reassessments of their suitability.
- Ensure the information security program remains current. It should reflect changes to operations, changes based on information gained from risk assessments, changes due to emerging threats, changes in personnel, and changes necessitated by other circumstances that may have a material impact on the information security program.
- Create a written incident response plan.
- Require the "Qualified Individual" to report to the Board of Directors, in writing, at least annually.[13]

65.    Given that Defendant is a financial institution that collected, used, and stored PII, Defendant had a duty to identify the risks and potential effects of collecting, maintaining, and sharing personal information.

66.    Without identifying the potential risks to the personal data in Defendant's possession, Defendant could not identify and implement the necessary measures to detect and prevent cyberattacks. The occurrence of the Data Breach indicates that Defendant failed to adequately implement one or more of the above measures to prevent cyberattacks, resulting in the Data Breach and the exposure of Plaintiff's and the Class Members' PII.

---

[13] *See*, https://www.ftc.gov/business-guidance/resources/ftc-safeguards-rule-what-your-business-needs-know (last accessed August 7, 2024).

67.     As a financial institution, Defendant had a duty to develop, implement, and maintain a written information security program designed to protect customer information.  The information security program should have been appropriate to the size and complexity of the Defendant's business, the nature and scope of Defendant's business activities, and the sensitivity of the information at issue.

68.     Defendant either failed to implement an information security program or Defendant's information security program was not designed to: (a) ensure the security and confidentiality of customer information; (b) protect against anticipated threats or hazards to the security or integrity of that information; and (c) protect against unauthorized access to that information that could result in substantial harm or inconvenience to any customer.

69.     Defendant's duty included a responsibility to ensure it: (i) implemented reasonable administrative, technical, and physical measures to detect and prevent unauthorized disclosures of PII; (ii) contractually obligated its vendors to adhere to the requirements of Defendant's privacy policy; (iii) complied with the Safeguards Rule and other applicable statutes and data protection obligations; (iv) conducted regular privacy assessments and security audits of Defendant's and/or its vendors' data processing activities; (v) regularly audited for compliance with contractual and other applicable data protection obligations; and, (vi) provided timely notice to individuals impacted by a data breach event.

26

70.    Defendant also had a duty to employ reasonable security measures under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits unfair or deceptive trade practices that affect commerce. Deceptive practices, as interpreted by the FTC, include failing to adhere to a company's own published privacy policies.

71.    Defendant also had a duty to exercise appropriate clearinghouse practices to remove PII that Defendant was no longer required to retain.

72.    Defendant had a duty to notify Plaintiff and the Classes of the Data Breach promptly and adequately. Such notice was necessary to allow Plaintiff and the Classes to take steps to prevent, mitigate, and repair any fraudulent usage of their PII.

73.    Defendant violated Section 5 of the FTC Act by failing to adhere to its own privacy policy regarding the confidentiality and security of Plaintiff and Class Members information. Defendant further violated Section 5 of the FTC Act, the Safeguards Rule, and other state consumer protection statutes by failing to implement an information security plan or use reasonable security measures to protect PII. Defendant's violations of Section 5 of the FTC Act, the Safeguards Rule, and other state consumer protection statutes, constitutes negligence *per se.*

74.    Defendant breached its duties, and thus was negligent, by failing to use reasonable measures to protect Class Members' PII. The specific negligent acts

and omissions committed by Defendant includes, but are not limited to, the following:

- Failing to designate a qualified individual to implement and supervise its information security program.

- Failing to conduct an assessment to determine foreseeable risks and threats – internal and external – to the security, confidentiality, and integrity of customer information.

- Failing to design and implement safeguards to control the risks identified through the risk assessment.

- Failing to implement organizational controls, including employee training on methods to identify and prevent data breaches and email compromises.

- Failing to encrypt personally identifying information in transit and at rest.

- Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' PII.

- Failing to adequately monitor the security of their networks and systems.

- Allowing unauthorized access to PII.

- Failing to detect, in a timely manner, that PII had been compromised.

- Failing to remove former customers' PII it was no longer required to retain.

- Failing to timely and adequately notify Plaintiff and Class Members about the Data Breach's occurrence and scope, so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

- Failing to implement data security practices consistent with Defendant's published privacy policies and industry best practices.

28

75.     Plaintiff and Class Members were within the class of persons the Federal Trade Commission Act and the Safeguards Rule were intended to protect and the type of harm that resulted from the Data Breach was the type of harm the statue was intended to guard against.

76.     The injuries resulting to Plaintiff and the Classes because of Defendant's failure to use adequate security measures was reasonably foreseeable.

77.     Plaintiff and the Classes were the foreseeable victims of a data breach. Considering Defendant had experienced a similar data breach in October 2023— one month before this Data Breach—Defendant knew or should have known of the inherent risks in collecting and storing PII, and the critical importance of protecting that PII.

78.     Plaintiff and the Classes had no ability to protect the PII in Defendant's possession. Defendant was in the best position to protect against the harms suffered by Plaintiff and the Classes as a result of the Data Breach.

79.     But for Defendant's breach of duties owed to Plaintiff and the Classes, their PII would not have been compromised. There is a close causal connection between Defendant's failure to implement reasonable security measures to protect the PII of Plaintiff and the Classes and the harm, or risk of imminent harm, suffered by Plaintiff and the Classes.

80.     As a result of the Data Breach, Plaintiff and Class Members suffered injuries including, but not limited to: (i) invasion of privacy; (ii) theft of their PII; (iii) lost or diminished value of PII; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) experiencing an increase in spam calls, texts, and/or emails; (vii) statutory damages; (viii) nominal damages; and (ix) the continued and increased risk their PII will be misused, where: (a) their data remains unencrypted and available for unauthorized third parties to access; and (b) remains backed up under Defendant's possession or control and is subject to further unauthorized disclosures so long as Defendant fails to implement appropriate and reasonable measures to protect the PII.

81.     Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

82.     Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to: (i) strengthen its data protection procedures; (ii) implement a regular training program to teach employees how to recognize cybersecurity risks and prevent cybersecurity incidents; and (iii) to provide adequate credit monitoring to all affected by the Data Breach.

## COUNT 2
## UNJUST ENRICHMENT

83.    Plaintiff re-alleges and incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

84.    By providing their PII, Plaintiff and Class Members conferred a monetary benefit on Defendant. Defendant used the PII to market, advertise, and sell additional financial products and services to Plaintiff and Class Members. Defendant knew that Plaintiff and Class Members conferred a benefit upon Defendant, who accepted and retained that benefit.

85.    By collecting the PII, Defendant was obligated to safeguard and protect such information, to keep such information confidential, and to timely and accurately notify Plaintiff and Class Members if their data had been compromised or stolen.

86.    Defendant failed to secure Plaintiff's and Class Members' PII and, therefore, it would be unjust for Defendant to retain any of the benefits that it received without paying Plaintiff and Class Members value in return.

87.    As a direct and proximate result of the Defendant's conduct, Plaintiff and Class Members suffered injuries including, but not limited to: (i) invasion of privacy; (ii) theft of their PII; (iii) lost or diminished value of PII; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) experiencing an increase in spam calls, texts, and/or emails; (vii) statutory damages; (viii) nominal damages;

and (ix) the continued and increased risk their PII will be misused, where: (a) their data remains unencrypted and available for unauthorized third parties to access; and (b) remains backed up under Defendant's possession or control and is subject to further unauthorized disclosures so long as Defendant fails to implement appropriate and reasonable measures to protect the PII.

88.     Plaintiff and Class Members are entitled to full refunds, restitution, and/or damages from Defendant and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendant from its wrongful conduct.

## COUNT 3
## INVASION OF PRIVACY

89.     Plaintiff re-alleges and incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

90.     Plaintiff and Class Members had a legitimate expectation of privacy in their personally identifying information such as their social security numbers, dates of birth and other financial details. Plaintiff and Class Members were entitled to the protection of this information from disclosure to unauthorized third parties.

91.     Defendant owed a duty to Plaintiff and Class Members to keep their PII confidential.

92.     Defendant permitted the public disclosure of Plaintiff's and Class Members' PII to unauthorized third parties.

93.     The PII that was disclosed without the Plaintiff's and Class Members' authorization was highly sensitive, private, and confidential. The public disclosure of the type of PII at issue here would be highly offensive to a reasonable person of ordinary sensibilities.

94.     Defendant permitted its information technology environment to remain vulnerable to foreseeable threats, which created an atmosphere for the Data Breach to occur. Despite knowledge of the substantial risk of harm created by these conditions, Defendant intentionally disregarded the risk, thus permitting the Data Breach to occur.

95.     By permitting the unauthorized disclosure, Defendant acted with reckless disregard for the Plaintiff's and Class Members' privacy, and with knowledge that such disclosure would be highly offensive to a reasonable person. Furthermore, the disclosure of the PII at issue was not newsworthy or of any service to the public interest.

96.      Defendant was aware of the potential of a data breach and failed to adequately safeguard its systems and/or implement appropriate policies and procedures to prevent the unauthorized disclosure of Plaintiff's and Class Members' data.

97.     Defendant acted with such reckless disregard as to the safety of Plaintiff's and Class Members' PII to rise to the level of intentionally allowing the intrusion upon the seclusion, private affairs, or concerns of Plaintiff and Class Members.

98.     Plaintiff and Class Members have been damaged by the invasion of their privacy in an amount to be determined at trial.

**COUNT 4**
**Violation of the California Unfair Competition Law**
**Cal. Bus. & Prof. Code §17200 et seq**

99.     Plaintiff re-alleges and incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

100.    CUSO is a "person" defined by Cal. Bus. & Prof. Code § 17201.

101.    CUSO violated Cal. Bus. & Prof. Code § 17200 et seq. ("UCL") by engaging in unlawful, unfair, and deceptive business acts and practices.

102.    CUSO's "unfair" acts and practices include:

a. CUSO failed to implement and maintain reasonable security measures to protect Plaintiff's and Class Members' personal information from unauthorized disclosure;

b. CUSO failed to identify foreseeable security risks, remediate identified security risks, and adequately improve security following previous cybersecurity incidents;

34

c. CUSO's failure to implement and maintain reasonable security measures also was contrary to legislatively-declared public policy that seeks to protect consumers' data as reflected in laws like the FTC Act (15 U.S.C. § 45), California's Customer Records Act (Cal. Civ. Code § 1798.80 et seq.), and California's Consumer Privacy Act (Cal. Civ. Code § 1798.150);

d. CUSO's failure to implement and maintain reasonable security measures also led to substantial consumer injuries, as described above, that are not outweighed by any countervailing benefits to consumers or competition. Moreover, because consumers could not know of CUSO's inadequate security, consumers could not have reasonably avoided the harms that CUSO caused; and

e. Engaging in unlawful business practices by violating Cal. Civ. Code § 1798.82.

103. CUSO has engaged in "unlawful" business practices by violating multiple laws, including California's Consumer Records Act, Cal. Civ. Code §§ 1798.81.5 (requiring reasonable data security measures) and 1798.82 (requiring timely breach notification), California's Consumer Privacy Act, Cal. Civ. Code § 1798.150, California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1780, et seq., and the FTC Act, 15 U.S.C. § 45.

104. CUSO's unlawful, unfair, and deceptive acts and practices include:

a. Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff's and Class members' personal information, which was a direct and proximate cause of the data breach;

b. Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the data breach;

c. Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class members' personal information, including duties imposed by the FTC Act, 15 U.S.C. § 45, California's Customer Records Act, Cal. Civ. Code §§ 1798.80 et seq., and California's Consumer Privacy Act, Cal. Civ. Code § 1798.150, which was a direct and proximate cause of the data breach;

d. Misrepresenting that it would protect the privacy and confidentiality of Plaintiff's and Class Members' personal information, including by implementing and maintaining reasonable security measures;

e. Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class Members' personal information, including duties imposed by the FTC

36

Act, 15 U.S.C. § 45, California's Customer Records Act, Cal. Civ. Code §§ 1798.80, et seq., and California's Consumer Privacy Act, Cal. Civ. Code § 1798.150;

f.  Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff's and Class Members' personal information; and

g.  Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class Members' personal information, including duties imposed by the FTC Act, 15 U.S.C. § 45, California's Customer Records Act, Cal. Civ. Code §§ 1798.80, et seq., and California's Consumer Privacy Act, Cal. Civ. Code § 1798.150.

105.  CUSO's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of CUSO's data security and ability to protect the confidentiality of consumers' personal information.

106.  As a direct and proximate result of CUSO's unfair, unlawful, and fraudulent acts and practices, Plaintiff and Class Members were injured and lost money or property,  which would not have occurred but for the unfair and deceptive acts, practices, and omissions alleged herein, monetary damages from

fraud and identity theft, time and expenses related to monitoring their financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft, and loss of value of their personal information.

107.    CUSO's violations were, and are, willful, deceptive, unfair, and unconscionable.

108.    Plaintiff and Class Members have lost money and property as a result of CUSO's conduct in violation of the UCL, as stated herein and above.

109.    CUSO acted intentionally, knowingly, and maliciously to violate California's Unfair Competition Law, and recklessly disregarded Plaintiff's and Class Members' rights.

110.    Past data breaches put Defendant on notice that its security and privacy protections were inadequate.

111.    Plaintiff and Class Members seek all monetary and nonmonetary relief allowed by law, including restitution of all profits stemming from CUSO's unfair, unlawful, and fraudulent business practices or use of their personal information; declaratory relief; reasonable attorneys' fees and costs; injunctive relief; and other appropriate equitable relief, including public injunctive relief.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the other members of the Classes alleged herein, respectfully requests that the Court enter judgment as

follows:

    A.    For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff(s) as the representatives for the Classes and counsel for Plaintiff(s) as Class Counsel;

    B.    For an order declaring the Defendant's conduct violates the statutes and causes of action referenced herein;

    C.    For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

    D.    Ordering Defendant to pay for lifetime credit monitoring and dark web scanning services for Plaintiff and the Classes;

    E.    For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

    F.    For prejudgment interest on all amounts awarded;

    G.    For an order of restitution and all other forms of equitable monetary relief requiring the disgorgement of the revenues wrongfully retained as a result of the Defendant's conduct;

    H.    For injunctive relief as pleaded or as the Court may deem proper; and

    I.    For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit, and any other expense, including expert witness fees; and

    J.    Such other relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all claims in this Complaint and of all issues in this action so triable as of right.

Dated: November 5, 2024                Respectfully submitted,

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

/s/ *John C. Bohren*
**YANNI LAW APC**
John C. Bohren (California State Bar
No. 295292)
yanni@bohrenlaw.com
145 South Spring Street, Suite 850
Los Angeles, CA 90012
Telephone: (619) 433-2803
Fax: (800) 867-6779


AND


**POULIN | WILLEY |**
**ANASTOPOULO, LLC**
Paul J. Doolittle (*Pro Hac Vice*
Forthcoming)
paul.doolittle@poulinwilley.com
cmad@poulinwilley.com
32 Ann Street
Charleston, SC 29403
Telephone: (803) 222-2222
Fax: (843) 494-5536

*Attorneys for Plaintiffs*